**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

    Plaintiff,

                                  Case No.: 8:01-CR-333-T-30MAP

v.

STEPHEN BRACCIALE

    Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

I.    THE GOVERNMENT BEARS THE BURDEN OF PROVING A LOSS.

The Government bears the burden of proving a loss. "Upon challenge, however, the government bears the burden of supporting its loss calculation with reliable and specific evidence." *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999). "Alleged victims cannot determine their own 'losses.' The Government had the burden to prove the amount of the loss by a preponderance of the evidence." *United States v. Renick*, 273 F.3d 1009, 1027 (11th Cir. 2001).

II.    THE LOSS AMOUNT CALCULATED BY THE COURT BASED ON THE GYLLING MEMO WILL OVERSTATE THE SERIOUSNESS OF THE OFFENSE.

U.S.S.G. § 2F1.1 application note 10 (Nov. 1995 edition) provides that a loss figure which "overstate[s] the seriousness of the offense" may warrant a downward departure. *See United States v. Renick*, 273 F.3d 1009, 1027-28 (11th Cir. 2001) (recognizing the availability of this departure in appropriate circumstances). The loss determined by the Court based on the Gylling memo will overstate the seriousness of this offense because it will assume that Kraft

derived no benefit from the billbacks paid to McLane for products diverted to D&K. In fact, however, Kraft has conceded that it made a profit on each of the diversions to D&K. *See* 8-2-02 Patrice Bazianos letter to Victor Martinez, attached as **Exhibit 1**, stipulating that a gross margin was made by Kraft on diverted products and therefore "that a profit was realized on all these transactions". Because Kraft profited from each of the diversions to D&K, Kraft cannot fairly be said to have derived no benefit from the billbacks it paid to McLane for those products which were transhipped to D&K. Consequently, a downward departure is necessary to correct what would otherwise be a loss figure which overstated the harm to Kraft and thus the seriousness of this offense.

The loss determined by the Court based on the Gylling memo will also overstate the seriousness of the offense because any additional profits which Kraft might have made if the diversions had not taken place constitute mere consequential injuries which under U.S.S.G. § 2F1.1 application note 7(c) cannot be used to calculate loss except in procurement fraud and product substitution cases. As the Eleventh Circuit stated in its *Bracciale* opinion, under U.S.S.G. § 2F1.1 "[t]he measure of harm generally focuses on the 'victim's direct loss', *see United States v. Wilson*, 993 F.2d 214, 217 (11th Cir. 1993), such as 'the value of the money, property, or services unlawfully taken.' U.S.S.G. 2F1.1 cmt. n.7." *United States v. Bracciale*, 374 F.3d 998, 1003 (11th Cir. 2004). In *Wilson*, the Eleventh Circuit held that "[t]he phrase 'property taken, damaged or destroyed' does not allow for inclusion of incidental or consequential injury ...." *Wilson*, 993 F.2d at 217. Therefore, the loss determined by the Court based on the Gylling memo will overstate the seriousness of the offense because that loss figure is based on additional profits which are mere consequential injuries.

Moreover, the loss determined by the Court based on the Gylling memo will overstate the seriousness of the offense because McLane and/or retailers McLane serviced performed the required merchandising, and therefore earned Kraft's discount, and were free to "spend" that discount on D&K. McLane and/or retailers 7-11 and Circle K to whom McLane sold did promotions and advertising on a monthly basis for Kraft cheese, Kraft dairy products, and Oscar Meyer products, as described in the 3-30-03 letter from Scott Gabriele attached as **Exhibit 2**. (7-11 and Circle K convenience stores accounted for approximately 60 percent of McLane's retail sales). McLane therefore earned its discounts from Kraft. Gylling Testimony at 69 (Transcript of Evidentiary Hearing on Motion to Withdraw Guilty Plea, March 13, 2002), attached as **Exhibit 3** ("Assuming that the wholesaler complies with whatever the terms of the requirements are, they would be entitled to receive the promotional dollars"). Nothing prohibited McLane from using its earned discount money to benefit D&K. 3-26-03 Ron Rumpler interview, attached as **Exhibit 4** (stating that if a customer performs the merchandising required for a merchandising allowance the customer has earned the applicable discounts and can do anything with the discount money).

Kraft has produced no evidence that McLane did not earn the merchandising and/or purchase and merchandising allowances for the products which were shipped to D&K. Gylling testified that he only assumed McLane had not earned these allowances.[1] Moreover, Kraft

---

[1] Q: Okay. But what has Kraft done since all this happened vis-à-vis policing to ascertain whether or not McLanes in fact earned the promotional dollars they used to discount Kraft product?

A: I would assume -- I was not part of it, but I would assume there was an investigation that took place to try to determine that, whether there were -- they actually earned the dollars that were paid to them or not.

Q: And those findings from those -- from that investigation effort would be reduced to a report?

A: If one occurred, I assume it would have been.

Q: And you've reviewed this report?

repeatedly failed to produce any requested sales data establishing lack of merchandising by McLane. *See* 1-23-02 Victor Martinez letter to AUSA Jay Hoffer requesting "any evidence which would suggest that any diversions of product through McLanes to D&K resulted in a loss of anticipated or contracted promotional and/or advertising activities that would have been performed but for the McLanes-D&K diversion", attached as **Exhibit 6**; 2-3-03 Victor Martinez letter to Patrice Bazianos requesting in item 3 "[a]ny and all evidence or documentation which demonstrates directly or indirectly that McLanes and/or their retail customers have or have not legitimately earned promotional and/or new distribution dollars which were awarded by Kraft to McLanes during the calendar years 1995-97", attached as **Exhibit 7**; and 2-10-03 Patrice Bazianos letter to Victor Martinez stating "Kraft currently has no documentation responsive to [his 2-3-03] request," attached as **Exhibit 8**.

Furthermore, Kraft would have recovered unearned merchandising allowances and purchase and merchandising allowances paid to McLane and would have stopped selling to McLane if Kraft had proof that McLane had not completed the required performance to earn these allowances. Gylling Testimony at 67, attached as **Exhibit 9** (testifying that "Kraft will terminate selling to a distributor that has been clearly identified as a diverter", but that "Kraft has not stopped doing business with McLanes"). The fact that Kraft neither recovered money from McLane for the allowances Gylling alleged were unearned nor stopped doing business with McLane proves that Kraft lacks proof that the payments made under these allowances were in

---

A: I have not.

Q: Has it been made available to you?

A: No, it has not.

Gylling Testimony at 70 (Transcript of Evidentiary Hearing on Motion to Withdraw Guilty Plea, March 13, 2002), attached as **Exhibit 5**.

fact unearned. *See* Mark O'Toole Affidavit at ¶8, attached as **Exhibit 10** ("Based on my 27 years of experience in the food business, I know that if a manufacturer had proof that a merchandising allowance was paid but had not been earned, the customer that was paid this merchandising allowance would be re-billed, and the manufacturer would recover these unearned dollars. Conversely, the fact that a manufacturer did not recover money paid to a distributor pursuant to a merchandising allowance is strong evidence that the manufacturer believed the distributor had performed and had earned the money paid under this merchandising allowance").

Accordingly, Defendant requests that this Court depart downward from the loss figure determined based on the Gylling memo. In its original sentencing the Court similarly departed downward two levels based on overstated loss.

III. DEFENDANT'S COOPERATION WITH FEDERAL LAW ENFORCEMENT SHOULD BE CONSIDERED BY THE COURT WHEN IT APPLIES THE 18 U.S.C. § 3553(a) FACTORS.

In *United States v. Booker,* 125 S.Ct. 738, 764-65 (2005), the Supreme Court held that the Sentencing Reform Act requires district courts to consider the "sentencing goals" outlined in 18 U.S.C. § 3553(a) as well as the advisory Sentencing Guidelines range, in fashioning a reasonable sentence. Among these § 3553(a) goals are the need "to promote respect for the law, and to provide just punishment for the offense", "to afford adequate deterrence to criminal conduct", and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (B) and (C).

In this case, Defendant Bracciale has provided significant cooperation to federal law enforcement, as explained in detail in the affidavit of Robert Mazur filed *in camera* and incorporated by reference as **Exhibit 11**, although this cooperation has not yet been rewarded with a § 5K1.1 motion for downward departure due to substantial assistance by the Government.

5

Yet despite the fact that "[a] sentencing court cannot depart from an advisory guideline range absent a motion from the government," *United States v. Crawford,* 2005 WL 1005280, *8 (11th Cir. 2005), this Court can and should give credit to the Defendant for his cooperation through its evaluation of the § 3553(a) factors.

As the Tenth Circuit has held, "[a] defendant's assistance to the government is also relevant to the factors delineated in § 3553(a)(2), particularly the need for the sentence to promote respect for the law and to provide just punishment, to afford adequate deterrence, and to protect the public." *United States v. Doe,* 398 F.3d 1254, 1260 (10th Cir. 2005). *See also United States v. Gall,* 2005 WL 1311502, *2 (S.D. Iowa 2005) (holding that defendant's cooperation with the Government which did not earn a Government § 5K1.1 motion should be considered under the § 3553(a) factors as a basis, among other factors, for sentencing the defendant to three years probation rather than the advisory Guidelines range of 30-37 months). For that reason, "a defendant's assistance should be fully considered by a district court at sentencing even if that assistance is not presented to the court in the form of a 5K1.1 motion." *Id.* at 1261. "The possibility that defendant's cooperation and assistance may not have been sufficient to justify a downward departure under the old mandatory guidelines system ... does not foreclose the court from considering this factor under § 3553." *United States v. Hubbard,* 2005 WL 958247, *2 (D.Mass. 2005) (departing from advisory Guidelines range of 188-235 months to 108 months). In short, Defendant Bracciale's "cooperation with the Government (while not in the Government's view sufficient to warrant a motion pursuant to § 5K1.1 and thus warranting a departure) is now something that the Court may consider along with all the other factors in § 3553(a)." *United States v. Murray,* 2005 WL 1200185, *3 (S.D.N.Y. 2005)(ordering

resentencing based on defendant's cooperation which the Government found did not warrant a § 5K1.1 motion).

IV. THE COURT SHOULD FASHION THE DEFENDANT'S SENTENCE SO AS TO AVOID AN UNWARRANTED DISPARITY WITH THAT IMPOSED ON CO-CONSPIRATOR DAVID WEINBAUM.

Under *Booker*, courts are to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Booker*, 125 S.Ct. at 764; 18 U.S.C. § 3553(a)(6). Following *Booker*, numerous courts have sentenced below the advisory Guidelines range in order to prevent an unwarranted disparity with a sentence imposed previously upon a similar defendant who engaged in similar conduct. *United States v. Revock*, 353 F.Supp.2d 127 (D.Me. 2005); *United States v. Colby*, 367 F.Supp.2d 1 (D.Me. 2005); *United States v. Green*, 2005 WL 1423255 (S.D.N.Y. 2005); *United States v Lewis*, 2005 WL 1512088 (D.Mass. 2005; *Simon v. United States*, 361 F.Supp.2d 35 (E.D.N.Y. 2005); *United States. V. Hensley*, 2005 WL 705241 (W.D.Va. 2005).

In this case, Defendant Bracciale and his co-conspirator David Weinbaum engaged in exactly the same criminal conduct and split the benefits of their joint scheme. Yet David Weinbaum received a probationary sentence despite receiving no § 5K1.1 motion from the Government. The Court must avoid a situation in which one member of a two-person conspiracy is sentenced to probation while the other member is sentenced to prison. *Simon*, 361 F.Supp.2d at 49 ("Avoidance of such disparity is appropriate because both Simon and his co-defendant engaged in the same criminal conduct.")

V. DEFENDANT OBJECTS TO HIS SENTENCE BEING INCREASED BEYOND THE ADVISORY GUIDELINES BASE OFFENSE LEVEL BASED ON FACTS NOT ESTABLISHED BY HIS GUILTY PLEA.

In *United States v. Booker*, 125 S.Ct. 738, 756 (2005), the Supreme Court held that under the Sixth Amendment "[a]ny fact (other than a prior conviction) which is necessary to support a

sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." In this case, the maximum offense level under the advisory guidelines established by Defendant Bracciale's guilty plea is the base offense level of 6. Therefore, Defendant Bracciale objects to his sentence being increased beyond the advisory base offense level of 6 through, for example, increases based on the loss amount and the abuse of trust enhancement because the facts necessary to support those adjustments or enhancements were neither admitted by the Defendant nor proven to a jury beyond a reasonable doubt.

Respectfully submitted,

_/s/ Kevin J. Darken_
TODD FOSTER, ESQ.
Florida Bar No. 0325198
KEVIN J. DARKEN, ESQ.
Florida Bar No. 0090956
Cohen, Jayson & Foster, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, FL  33602
(813) 225-1655; (813) 225-1921 - Fax
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was Electronic Court Filed to Assistant United States Attorney Jay Hoffer, 400 N. Tampa St., Suite 3200, Tampa, FL 33602 on this 28th of March, 2006.

_/s/ Kevin J. Darken_
Attorney